UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRENDA L. RUSSELL, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 1:15-cv-0703-DKL-TWP |

*Entry on Judicial Review*

Brenda L. Russell appeals the decision of the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act. The parties have consented to the Magistrate Judge's exercise of jurisdiction, and the District Judge has referred the case to the undersigned to conduct all proceedings and enter judgment in this matter pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The Court finds that the decision must be vacated and remanded.

I.  Background

Russell applied for disability insurance benefits, alleging disability beginning May 18, 2011, because of osteoarthritis, inflammatory polyarthropathy (a type of arthritis involving five or more joints), erythema nodosum (inflammation of the fat cells under the skin), fibromyalgia, glaucoma, and lower back degeneration. [R. 181.] She was 46 years old at the time of the Administrative Law Judge's ("ALJ") decision and had worked in

data entry and a shipping warehouse team leader. At the hearing before the ALJ Russell testified that her rheumatoid arthritis was the primary reason why she was unable to work. [R. 48-49.] She experiences pain in every joint in her body and rated her pain as a 8 on a 10-point scale. [R. 49.] She takes a lot of medication, but does not take any pain medication because she could not tolerate it—it makes her very nauseous and causes her to vomit. [R. 49-50.] Russell uses a cane. [R. 50.] Stress triggers flare ups of her arthritis pain. [R. 53.] She has swelling in her ankles, feet, knees, and hands [R. 63], and has trouble falling. [R. 63.] She stated that she has to talk herself into getting out of bed. [57.]

Medical records include diagnoses and treatment for, among other conditions, rheumatoid arthritis, osteoarthritis, inflammatory polyarthropathy, and fibromyalgia. Rheumatologist Candace Flaugher treated Russell for inflammatory polyarthropathy; her treatment records also include a diagnosis of fibromyalgia. Dr. Flaugher provided a medical source statement regarding Russell's physical capacity, opining that Russell could work no hours per day during a flare-up, and that she would experience flare-ups more than three times a month. [R. 370.] Dr. Flaugher indicated that Rusell could sit and stand/walk less than two hours in an eight-hour workday. She rated Russell's pain as a 10 on a 10-point scale and noted associated symptoms of limited back motion and morning stiffness. [*Id.*]

In September 2013, Russell presented to Dr. Randall J. Reed, a rheumatologist, for further evaluation of joint and muscle pain, which had been present since April 2011. She complained of, among other things, extreme fatigue, weakness, pain rated as a 6 on a 10-point scale, stiffness lasting 3 hours in the morning, constipation, trouble sleeping, and

2

joint pain and swelling. [R. 464-65.] Dr. Reed indicated that despite a diagnosis of fibromyalgia (presumably referring to Dr. Flaugher's diagnosis), Russell had not been put on any fibromyalgia medications. [R. 465.] On exam, Dr. Reed noted some restriction in Russell's range of motion of the cervical and lumbar spine. [R. 465-66.] He also noted that she was positive for 14 out of 18 fibromyalgia tender points, which he characterized as "extensive." [R. 466.] Dr. Reed diagnosed polyarthralgia, fibromyalgia, and fatigue [*id.*] and started Russell on Gabapentin to treat her fibromyalgia.

Russell saw Dr. Reed a month later, at which time she rated her pain as a 5 on a 10-point scale with 3 hours of morning stiffness. [R. 462.] On exam, Dr. Reed noted some tenderness in her abdomen [*id.*] and a full range of motion in her upper and lower extremities. [R. 463.] However, he found that Russell had 16 out of 18 fibromyalgia tender points. [*Id.*] He increased her dosage of Gabapentin. [*Id.*]

The ALJ issued a written decision. He found that Russell had severe impairments of inflammatory arthritis and degenerative disc disease of the cervical and lumbar spine and non-severe impairments of erythema nodosum, an essential tremor in her right hand, fibromyalgia, glaucoma, obesity, and a urinary tract infection. [R. 14-15.] He determined that she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [R. 16.] The ALJ assessed her residual functional capacity [R. 16-22] and, based on the vocational expert's testimony, found that someone with Russell's residual functional capacity would be capable of performing her past work in data entry. [R. 22.] Therefore, he concluded that Russell was not disabled. Russell requested review of the decision, which the Appeals

Council denied. She then commenced this action, seeking review of the ALJ's decision denying her benefits.

## II. Discussion

Judicial review of the ALJ's decision is limited to determining whether the findings of fact are supported by substantial evidence and whether any errors of law have been made. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court considers the entire record but does not reweigh the evidence, resolve conflicts in the record, make credibility determinations, or substitute its own judgment for that of the ALJ. *See Stepp*, 795 F.3d at 718; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ need not address every piece of evidence in the record, but must build a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Russell argues that the ALJ erred in three main ways: (1) in evaluating the evidence of her fibromyalgia and improperly rejecting the opinions of her treating physicians, Dr. Reed and Dr. Flaugher; (2) in failing to summon a medical advisor to testify whether her combined impairments medically equal a listed impairment; and (3) in determining her residual functional capacity.

Fibromyalgia is a rheumatic disease that "cannot be confirmed by objective laboratory tests." *Gilley v. Colvin*, No. 1:14-CV-00202-JMS-TAB, 2014 WL 6065899, at *4 (S.D. Ind. Nov. 13, 2014). "Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Because of the subjective nature of its symptoms, it is difficult to determine its severity. *See id.* at 306-07.

A treating physician's opinion is entitled to controlling weight if it is well-supported and not inconsistent with other substantial evidence. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). An ALJ must give good reasons for rejecting a treating physician's opinion that is supported by medical evidence and not inconsistent with substantial record evidence. *Schaaf v. Astrue*, 602 F.3d 869, 874-75 (7th Cir. 2010). A court will "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" *Stepp*, 795 F.3d at 718 (quoting *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)). Here, the ALJ gave patently erroneous reasons for discounting the treating physicians' opinions.

Dr. Reed, a rheumatologist, found that Russell had 14 out of 18 fibromyalgia tender points on exam, which he described as "extensive fibromyalgia tender points." [R. 466.] On subsequent exam, he found that she had 16 of 18 tender points. The ALJ wrote that Dr. Reed's opinion was "vague" and "does not identify locations of these 'tender points.'" [R. 14.] The ALJ also wrote that "Russell's treatment history does not establish

5

symptoms whish satisfy the criteria of the 2010 American College of Rheumatology Preliminary Diagnostic Criteria." [R. 15.]

Although the American College of Rheumatology (ACR) 1990 Criteria for the Classification of Fibromyalgia require that the tender points "be found bilaterally" and "both above and below the waist," *see Social Security Ruling 12-2p*, http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR2012-02-di-01.html, a finding of 14 out of 18 tender points necessarily satisfies this criteria. *See id.* It follows that a finding of 16 tender points satisfies this criteria as well. Thus, the failure to identify the specific locations of the tender points was an insufficient reason to discount Dr. Reed's opinion.

Even assuming that the ALJ correctly found that Russell's treatment history did not establish symptoms that satisfy the 2010 ACR Preliminary Diagnostic Criteria—requiring a history of widespread pain, repeated manifestations of 6 or more fibromyalgia symptoms, signs, or co-occurring conditions, and evidence that other disorders were excluded—to establish a medical determinable impairment of fibromyalgia, Russell only had to establish that she met the 1990 ACR Criteria for the Classification of Fibromyalgia *or* the 2010 ACR Preliminary Diagnostic Criteria, not both. *See, e.g., Thomas v. Colvin*, No. 3:14-CV-651-TLS, 2015 WL 1966356, at *6 (N.D. Ind. May 1, 2015) ("A person will be found to have a medical determinable impairment of fibromyalgia if the physician who made the diagnoses provides evidence that falls within one of the two sets of criteria … : criteria based on the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia (listed in SSR 12–2p,

section II.A.), or; the 2010 ACR Preliminary Diagnostic Criteria (listed in SSR 12–2p, section II.B)); SSR 12-2p. Thus, any failure to satisfy the 2010 ACR Preliminary Diagnostic Criteria would be an insufficient reason to discount Dr. Reed's opinion.

Turning to Dr. Flaugher's opinions, she determined that Russell suffered from inflammatory polyarthropathy and chronic pain. Although her medical source statement does not include the diagnosis of fibromyalgia, her treatment records do note it as a "past medical condition." In any event, Russell has been diagnosed with fibromyalgia and, as noted, on examination had 16 positive tender points. Dr. Flaugher determined that as a result of her impairments, Russell could not work any number of hours during a flare-up and that she would have flare-ups in excess of 3 times per month. She also indicated that Russell's impairments limited her to sitting and standing/walking less than 2 hours in an 8-hour workday. As the ALJ acknowledged, Dr. Flaugher's medical source statement supports a finding that Russell was disabled. [R. 19.]

In giving Dr. Flaugher's opinions little weight, the ALJ noted that her medical source statement rated Russell's pain as a 10 out of 10, but her treatment records both immediately before and after the physician completed the statement indicated a pain level of 7 out of 10. However, the ALJ also gave erroneous reasons for rejecting Dr. Flaugher's opinions. First, he reasoned that Russell's primary care physician had noted from concurrent office visits that her condition is "stable." [R. 19 (citing R. 395).] "Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing [any] work." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). Even

7

individuals who are found to be disabled and entitled to social security benefits may have conditions that are stable.

Furthermore, the ALJ repeatedly referred to the lack of objective and clinical findings to support the allegations of debilitating pain and resulting functional limitations. [*See* R. 18-20.] He cited to Dr. Reed's observations on examination, which he found "nearly identical" to Dr. Flaugher's, specifically noting the findings of normal muscle strength, deep tendon reflexes, and full range of motion in the upper and lower extremities. [R. 19-20; *see also* R. 18 (stating that Dr. Flaugher's "examination is nearly bereft of any clinical findings").] The ALJ also relied on the "relatively unremarkable" findings on examination by the consultative examiner Dr. Park. [R. 19.] Moreover, according to the ALJ, Russell's clinical findings were "at some odds with her allegations of the severity of her pain." [*Id.*] The ALJ concluded by finding that "in light of the relatively mild objective and clinical findings in the evidence, a conclusion that [Russell's musculoskeletal] pain is preclusive of all work is simple [sic] not supported." [R. 20.] Because fibromyalgia's symptoms are entirely subjective and there are no objective tests for its severity, the ALJ patently erred in discounting Dr. Flaugher's opinions regarding the severity of Russell's fibromyalgia and resulting limitations based on the "relatively mild objective and clinical findings." *See Sarchet*, 78 F.3d at 306.

Defendant's effort to distinguish *Sarchet* on the ground that the ALJ used the lack of objective medical evidence to determine the weight to give Dr. Flaugher's opinion rather than to determine the severity of Plaintiff's fibromyalgia is unpersuasive. Dr. Flaugher gave an opinion about Russell's functional limitations that rendered her unable

8

to work. It seems that such an opinion would necessarily correlate with an opinion about the severity of Russell's impairments.

Defendant argues that the ALJ did not commit reversible error because he found that if Russell's fibromyalgia resulted in any demonstrable functional limitations, the RFC that he found her to have accommodated such limitations. [R. 15.] However, this does not insulate the ALJ's decision from remand. The ALJ discounted Dr. Reed's and Dr. Flaugher's opinions, including the latter's opinion as to Russell's functional limitations, based on patently erroneous reasoning. In addition, the ALJ rejected Russell's allegations of disabling pain, at least in part, based on that same faulty reasoning. The Court acknowledges that the ALJ's finding that Russell was partially credible was also based on other factors. But the ALJ's credibility finding rested heavily on the lack of supporting clinical and objective evidence [*see, e.g.*, R. 17], and the Court is unable to parse this factor out of the ALJ's reasoning.

Russell's second contention is that the ALJ erred in failing to have a medical advisor testify about whether her combination of impairments medically equals a listed impairment. An ALJ must consider an expert's opinion on the issue of whether an impairment or combination of impairments equals a listing. *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004). A state agency physician opinion on a disability form satisfies this requirement. *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). However, Russell argues that the ALJ could not have reasonably relied on the state agency reviewers' opinions because they were given without the benefit of having reviewed Dr. Reed's diagnosis and treatment evidence and Dr. Flaugher's medical source statement.

9

The state agency reviewers' opinions on medical equivalence did predate the evidence from Dr. Reed and Dr. Flaugher's evaluation. Their records and opinions might conceivably change the state agency reviewers' opinions. Moreover, the ALJ's written decision does not expressly rely on the state agency physician's opinions as to medical equivalence, so it is unclear that the ALJ relied on them. The ALJ will have another opportunity to consider an expert's opinion on medical equivalence on remand.

Finally, Russell challenges the ALJ's RFC evaluation, arguing that he did not accurately account for her impairments. A person's RFC is what her or she "can still do despite his or her limitations." *Murphy*, 759 F.3d at 817. "An RFC determination must account for all impairments, even those that are not severe in isolation." *Id.* at 820. Resolution of this issue hinges on a proper evaluation of the severity of Russell's fibromyalgia and the opinions of Dr. Reed and Dr. Flaugher. Therefore on remand the ALJ will need to re-evaluate Russell's RFC.

### III. Conclusion

The Commissioner's decision denying social security benefits will be **vacated** and **remanded** for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

DATED: 06/06/2016

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record